Argued and submitted October 9, affirmed December 19, 2012, petition for review denied March 28, 2013 (353 Or 428)

In the Matter of S. W. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

W. H. F.,
*Appellant.*

Hood River County Circuit Court
J0703401;
Petition Number J0703402;
A150794

295 P3d 78

Megan L. Jacquot argued the cause and filed the brief for appellant.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

In *Dept. of Human Services v. W. F.*, 240 Or App 443, 247 P3d 329 (2011), this court reversed a juvenile court judgment that continued a permanency plan of adoption for father's five-year-old son, S, for the reason that the judgment did not include certain statutorily required determinations. On remand, the juvenile court made the appropriate determinations and once again continued the permanency plan of adoption. The court also ordered the filing of a termination petition. Father appeals once again. We affirm.[1]

The facts are largely undisputed. S and mother are members of the King Island Native Community Tribe in Alaska, so this case is subject to the Indian Child Welfare Act (ICWA). Father began a sexual relationship with mother when she was 14 years old and he was 33, and mother became pregnant with S as a result. Mother was a ward of the State of Alaska at that time and had run away from foster care. S was born on June 15, 2007. DHS took custody of S, who is now five years old, in August 2007, and he has been in foster care since that time.

Father was arrested in August 2007 and pleaded guilty to two counts of third-degree sexual abuse of a minor, arising out of his sexual relationship with mother. With the exception of approximately one month during April and May of 2008, father has been serving time in a Wyoming correctional facility since his arrest in 2007.[2] At the time of the hearing, he was in a re-entry facility with a projected release to occur some time between 2013 and January 2016. He is allowed to work in the community under supervision of a parole officer.

The permanency plan for S has been adoption since December 2008. S's first potential adoptive placement fell through when the foster parents divorced. S has been with his current foster family since September 2011. The potential

---

[1] Mother has previously relinquished parental rights to S and is not involved in this case.

[2] In September 2008, father was given a suspended sentence of six to eight years' imprisonment and placed on probation. A month later, he violated probation and the court ordered him to serve his sentence. He has remained in custody since that time.

adoptive father is an Indian tribal member, although not of the same tribe as S.

As noted, the judgment currently on appeal continues adoption as the permanency plan for S.[3] Father requests

---

[3] We quote here the entirety of the juvenile court's findings with respect to the December 23, 2011, permanency determination:

"[T]he Court makes the following findings on clear and convincing evidence, because the child is an 'Indian child' under the Indian Child Welfare Act:

"1. The permanency plan in effect at the time of the permanency hearing was adoption.

"2. DHS has made reasonable efforts to place [S] in a timely manner in accordance with the permanency plan of adoption and has taken the steps necessary to finalize his permanent placement. Those steps include placing [S] in an Indian home that is prepared to adopt him. Adoption by this family has the approval of the King Island Native Community and DHS.

"3. DHS has considered whether other permanent planning options were appropriate, including in-state placement options and interstate placement options. Such options were not consistent with the plan of adoption nor were they otherwise appropriate.

"4. DHS has made diligent efforts to place the child with relatives. No relatives of Father's ha[ve] been able to meet the placement requirements of the foreign state and relatives of Mother are not suitable or are unknown. [S] has no known siblings.

"5. Continued substitute care is required as necessary to the plan of adoption.

"6. The current placement is intended to be permanent.

"7. DHS continues to make reasonable efforts to finalize the permanent plan of adoption for [S], including filing for termination of parental rights, holding an adoption committee, selecting an adoptive family, involving the native community in the placement selection, ensuring [S] is receiving needed counseling and developmental services including preschool and play therapy services, making monthly home visits with [S] in adoptive home, completion of required adoption-related paperwork (legal assistance referral, adoption child summary, medical/birth information, etc.), completing a Life Book story and photo book for [S].

"8. That the number of placements made, schools attended, face-to-face contacts with the assigned caseworker, and parent visitation was established and the frequency of each of these is in the best interest of the child.

"a. Number of placements: 3.

"b. Number of schools: Child is not yet school aged. He is participating in Head Start and preschool.

"c. Parent-child visitation: 1 visit on May 2, 2008. DHS has facilitated contact by pictures, photos, letters and audiotapes while Father has been incarcerated in Wyoming.

"d. Face-to-Face Contacts between DHS worker and child (6/10 to present): 20 as set out in the Permanency Court Report (Exhibit 2).

"9. Adoption will continue to be the permanent plan for [S]."

that we exercise our discretion under ORS 19.415(3) to review the juvenile court's ruling *de novo*, "at least with regard to the ICWA issues in order to determine the facts that apply to this case." We decline to do so, as this is not an exceptional case. ORAP 5.40(8)(c) (court will review record *de novo* "only in exceptional cases"). In any event, as noted, the facts are largely undisputed and the dispositive issues are legal.

In his first assignment of error, father asserts that, in continuing the permanency plan of adoption, the juvenile court erred by failing to require DHS to show "active efforts" to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. The state responds that, in the context of the permanency phase of a dependency proceeding, when, as here, the permanency plan at the time of the hearing is not reunification but adoption, the "active efforts" requirement set out in ORS 419B.476(2)(a) does not apply. That requirement applies only when the permanency plan is reunification. In this situation, DHS is required to make only "reasonable efforts" to find an adoptive placement. Father counters that each time a placement is changed for an Indian child, the state must show that it has made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family.

The state's position is correct. ORS 419B.476(2) provides, in part:

"At a permanency hearing the court shall:

"(a) *If the case plan at the time of the hearing is to reunify the family*, determine whether the Department of Human Services has made reasonable efforts or, if the Indian Child Welfare Act applies, *active efforts* to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns.

"(b) *If the case plan at the time of the hearing is something other than to reunify the family*, determine whether the department has made reasonable efforts to

place the ward in a timely manner in accordance with the plan, including, if appropriate, reasonable efforts to place the ward through an interstate placement, and to complete the steps necessary to finalize the permanent placement."

(Emphasis added.) Thus, in the permanency phase of a dependency case, the requirement for active efforts under ICWA applies only when the case plan at the time of the hearing is to reunify the family. ORS 419B.476(2)(a). *See Dept. of Human Services v. T. C. A.*, 251 Or App 407, 413, 283 P3d 956 (2012) (provisions of ORS 419B.476(2)(a) apply only when case plan at time of hearing is reunification). When, as here, the case plan at the time of hearing was not reunification, the active efforts standard set forth in ORS 419B.476(2)(a) does not apply.

To the extent that father is arguing that, irrespective of the requirements of ORS 419B.476(2)(a), ICWA itself requires a showing of "active efforts" at this procedural stage, we note that that was not the argument father made below. In any event, we reject it. ICWA provides, in part:

"Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitate programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."

25 USC § 1912(d). Under the statute, evidence of active efforts to provide specific services and programs for a parent is required only when a party is seeking to effect a "foster care placement" or termination of parental rights. It is undisputed that, although the hearing at issue in this case called for the initiation of a termination proceeding in the future, the permanency hearing itself is not a termination proceeding. Nor is it a proceeding to "effect a foster placement." Under ICWA, a "foster care placement" is defined as

"any action removing an Indian child from its parents or Indian custodian for temporary placement in a foster home * * * where the parent * * * cannot have the child returned upon demand, but where parental rights have not been terminated."

25 USC § 1903(1)(i). Here, no party sought to remove S from his parents. S had been removed from his parents in an earlier proceeding, where, presumably, active efforts occurred; during this proceeding, S was already in foster care. A continuation of a permanency plan for adoption is not the act of effecting a "foster care placement" as defined, and we conclude that a showing of active efforts is not required by ICWA in that context.[4]

Father contends in his second assignment of error that, contrary to the requirements of ICWA, he did not receive notice of S's move to his current adoptive placement. In support of his contention, father cites ICWA, 25 USC section 1916(b), which provides:

> "Whenever an Indian child is removed from a foster care home or an institution for the purpose of further foster care, pre-adoptive, or adoptive placement, such placement shall be in accordance with the provisions of this Act[.]"

Father asserts that under Bureau of Indian Affairs (BIA) guidelines, 44 CFR § 228(G)(3)(a), whenever a child's placement is changed, the parent must be notified. He contends that there is no evidence that he was notified of S's move to his current adoptive placement.

The state correctly responds that father failed to preserve his contention at trial. Father contends that, under ICWA, a procedural defect can be raised at any stage of the proceedings. We need not decide that question, because, even if the issue can be raised on appeal[5]—and even if 44 CFR section 228(G)(3)(a) requires notice to the parent each time a child is moved to a new adoptive placement, *but see*

---

[4] We express no opinion as to whether, under ICWA, the state is required to actually *make* active efforts at this stage of proceeding; we conclude only that a *showing* of such efforts is not required.

[5] In support of his contention that an ICWA procedural defect can be raised at any time, father cites 25 USC section 1914:

> "Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe, may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912 [stating active efforts requirement], and 1913 of this title."

*State ex rel SOSCF v. Lucas*, 177 Or App 318, 324 n 4, 33 P3d 1001 (2001), *rev den*, 333 Or 567 (2002) (BIA guidelines have not been adopted by and are not binding on Oregon courts)—the record shows that father did, in fact, receive notice of S's move. We accordingly reject father's contention.

ORS 419B.476(5) requires that the juvenile court enter an order "within 20 days after the permanency hearing." In this case, the juvenile court entered its order 27 days after the permanency hearing. Citing *Dept. of Human Services v. E. L.*, 237 Or App 206, 238 P3d 438 (2010) (permanency judgment reversed on state's concession of error as result of four-month delay in entry of permanency judgment), father asserts that the error requires reversal. The state responds that the issue of the timeliness of the order was not preserved and that, assuming the court nonetheless may address the issue, the error does not require reversal.

It is undisputed on appeal that the permanency hearing record closed on December 21, 2011. The court sent an opinion letter to the parties on December 23, 2011. The letter included the essential of a permanency order, including the court's findings and determinations that DHS had complied with the statutes governing S's placement and had made reasonable efforts to finalize the permanency plan of adoption. The court entered its order on January 17, 2012, seven days late. The court's failure to enter the order within 20 days of the close of the hearing record was not a contention that father had an opportunity to preserve. Thus, we conclude that the constraints of preservation and plain error review are inapplicable. *See State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 182, 205 P3d 36 (2009). However, although we conclude that the juvenile court's failure to enter the order within 20 days was error, *see E. L.*, 237 Or App at 208, we decline to reverse this case on that ground. Father has not claimed any prejudice as a result of the seven-day delay, nor could he on this record. The error was harmless. *See State ex rel Juv. Dept. v. Kuhn*, 137 Or App 275, 276, 904 P2d 177 (1995) (even assuming the existence of a remedy for the court's failure to comply with the statute, parents did not show prejudice from the court's failure to enter the order within 20 days).

Finally, father contends that the court abused its discretion in not allowing father a continuance so that he could obtain testimony from his sister; according to father, that testimony would have established that she could have served as a primary placement preference. However, the court allowed father to make an offer of proof as to the evidence that the witness would have provided, and, having considered that offer, the court concluded, "Even if all of the witnesses * * * testified as outlined * * * it would not alter the decision of the court." In these circumstances, we cannot say that the court abused its discretion.

We have considered and reject without discussion father's remaining assignment of error.[6]

Affirmed.

---

[6] The state has filed a motion calling our attention to a subsequent juvenile court judgment in this case terminating father's parental rights in S, and noting that that judgment "probably renders this appeal moot." Father responds that the case is not moot because he has filed a notice of appeal of the termination judgment, and a decision to reverse in this case would invalidate the subsequent termination judgment. We agree with father.