Submitted July 17, affirmed October 9, 2019

In the Matter of I. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. S. W.,
*Appellant.*

Washington County Circuit Court
J150626;
Petition Number J150625M;
A169905 (Control)

In the Matter of K. B. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. S. W.,
*Appellant.*

Washington County Circuit Court
J150629;
Petition Number J150625M;
A169906

450 P3d 1029

Father appeals judgments establishing temporary guardianships over his two children who are enrolled members of the Confederated Tribes of the Siletz Indians. Father argues that the Department of Human Services (DHS) failed to prove, as is required under the Indian Child Welfare Act (ICWA), 25 USC §§ 1901-1963, that it had made "active efforts" to provide services to prevent the breakup of the Indian family and that those efforts failed. DHS responds that the juvenile court had made the necessary "active efforts" findings when it changed the children's permanency plans from reunification to guardianship, and that it did not need to make the findings again when it established the guardianships. *Held*: The juvenile court did not err in establishing the guardianships over both children. Under *Dept. of Human Services v. J. G.*, 260 Or App 500, 317 P3d 936 (2017), the juvenile court was not required to make a new "active efforts" finding when it actually ordered the guardianships, because the court had made that finding at a prior permanency hearing where it approved the placements.

Affirmed.

Michele C. Rini, Judge pro tempore.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Shannon Flowers, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General, filed the brief for respondent.

Before Hadlock, Presiding Judge, and Egan, Chief Judge, and Lagesen, Judge.

EGAN, C. J.

Affirmed.

**EGAN, C. J.**

This consolidated juvenile dependency case involves a father and two children who are enrolled members of the Confederated Tribes of the Siletz Indians. Under the Indian Child Welfare Act (ICWA), 25 USC §§ 1901-1963, involuntary child custody proceedings involving Indian children must comply with certain requirements. Among those is a requirement that any party seeking to effect a foster care placement of an Indian child shall satisfy the court that "active efforts" have been made to provide services to prevent the breakup of the Indian family, and that those efforts have failed. 25 USC § 1912(d). Relying on that section of ICWA, father appeals the judgments establishing temporary guardianships over his two children under ORS 419B.366. He argues that the Department of Human Services (DHS) failed to prove that it had made "active efforts," and, thus, that the juvenile court erred in establishing guardianships over the children. DHS responds that father's argument fails because the juvenile court made the necessary "active efforts" findings when it changed the children's permanency plans from reunification to guardianship, and that it did not need to make the findings again when it established the guardianships. For the reasons that follow, we agree with DHS that, under *Dept. of Human Services v. J. G.*, 260 Or App 500, 317 P3d 936 (2014), the juvenile court did not err. Accordingly, we affirm.

We review a juvenile court's legal conclusions for errors of law and are bound by its findings of historical fact if there is any evidence in the record to support them. *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012). Whether DHS satisfied ICWA's "active efforts" requirement is a question of law. *J. G.*, 260 Or App at 504. The facts in this case are largely undisputed, and we present only those relevant for our review.

In 2006, mother gave birth to I. Father did not have consistent contact with I, except for in 2014 when he lived with mother and I "on and off for about four months." In July of 2015, mother gave birth to K. Father asserted that he was K's biological father, but he did not have much contact

with either child. About three months later, DHS removed both I and K from mother's care, placed them in foster care, and filed petitions alleging that they were within the court's dependency jurisdiction.

In November 2015, the juvenile court ruled that both I and K were within its dependency jurisdiction. One of the bases for the court's ruling with regard to I was that father was I's "biological and legal father," and that he was "incarcerated and unavailable to parent." The court later ruled that there were additional bases for its dependency jurisdiction over I, namely, father's involvement in criminal activities and pattern of domestic violence. Regarding K, the court did not address any jurisdictional bases concerning father because he had not been determined to be K's legal father.

In September 2017, the court changed the permanency plans for both I and K from reunification to guardianship. At that hearing, the court found that DHS had made "active efforts" to reunify the family in accordance with ICWA.

In April 2018, DHS filed an amended petition with regard to K, alleging jurisdictional bases as to father, including that father is the biological father of K. Then, in May 2018, the court entered a new jurisdictional judgment. It determined that K was within its dependency jurisdiction as to father on the bases that father was indeed K's "biological father" and due to his "current history of residential instability," his "pattern of domestic violence and violent behavior," his "aware[ness] of *** the [jurisdictional bases] regarding mother," and his failure to "engage in the ordered services in order to gain custody." The court also found that DHS had made the necessary active efforts to try to make it possible for K to return home and it continued K's current permanency plan of guardianship.

In July 2018, DHS filed motions to establish guardianships over I and K, and the trial court held a hearing on those motions. The court ultimately entered judgments establishing guardianships over both children. Father appeals from those judgments.

Father raises four assignments of error, asserting in a single combined argument that DHS's efforts to reunify father with I and K did not qualify as "active efforts" and, thus, that the juvenile court erred in establishing guardianships over both children. DHS responds that the juvenile court made the necessary active efforts finding when it changed the children's plans away from reunification to guardianship, and that, under *J. G.*, DHS was not required to make the findings again at the time guardianship was established. In reply, father disputes that *J. G.* controls in this case, because his challenge is to the merits of the court's active efforts finding. Furthermore, father argues that even if *J. G.* does apply, its applicability is limited to I's case, because when the court made its "active efforts" ruling at the September 2017 permanency hearing, the court had not yet determined that it had dependency jurisdiction over K on any bases concerning father. DHS counters that the latter point is immaterial because, at the time it asserted jurisdiction over K as to father, the court made a renewed active efforts finding and continued the permanency plan of guardianship for K. For the reasons that follow, we agree with DHS.

Father's argument hinges on 25 USC § 1912(d), which provides:

> "Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."

Under ICWA, a "foster care placement" includes a child's placement in guardianship. *See* 25 USC § 1903(1)(i) (defining "foster care placement"); *J. G.*, 260 Or App at 516-17 (concluding that the establishment of an ORS 419B.366 temporary guardianship is a foster care placement under ICWA).

Establishing a guardianship is a two-step process. First, the court must find at a permanency hearing that

"active efforts were made and unsuccessful" in order to approve the change of plan to guardianship. *J. G.*, 260 Or App at 522. Then, at a separate hearing, the court may grant a party's motion to establish the guardianship. *Id.* at 523. In *J. G.*, we explained that when a party seeking placement "has satisfied the court at a prior [permanency] hearing on the placement at issue that active efforts were made and failed, that party discharges its duty under [25 USC §] 1912(d), and the court is not required to make that finding again at a later proceeding in which it actually orders that placement." *Id.* at 521. Thus, in the context of establishing a guardianship, if a court finds that "active efforts" were made at the permanency hearing, it need not make a finding on that issue again at the hearing to establish the guardianship. *Id.*

In this case, it is undisputed that the juvenile court found that DHS had made active efforts at the September 2017 permanency hearing, when the court changed the children's permanency plans from reunification to guardianship. Thus, under *J. G.*, the court was not required to make a finding on that issue again at the hearing implementing the plan and ordering guardianship.

Nonetheless, father contends that *J. G.*'s holding at least does not apply to K, because, unlike in *J. G.*, the juvenile court "never determined in a permanency judgment that the department's reunification efforts qualified as active prior to evaluating the department's request to establish a guardianship over K." We disagree. As DHS points out, in May 2018, when the juvenile court entered a jurisdictional judgment in which it found K within its dependency jurisdiction as to father, it found that DHS had made the necessary "active efforts" to make it possible for K to return home, *and*, *at the same time*, it continued K's permanency plan as guardianship. In those circumstances, the court was not required to make a new active efforts finding when it established the guardianship itself over K. *J. G.*, 260 Or App at 521-22 (juvenile court is not required to make a new active efforts finding at a later proceeding in which it actually orders the placement that the court previously approved, after finding that active efforts were made and failed).

We conclude that the juvenile court did not err in establishing guardianships over I and K. Therefore, we affirm.

Affirmed.