203 P.3d 262 (2009)
226 Or. App. 121
In the Matter of L.N., aka M.G.L.E.A.L.E.F.N.; and A.H.G., Minor Children.
STATE ex rel. JUVENILE DEPARTMENT OF MULTNOMAH COUNTY, Respondent,
v.
T.N., aka T.N., aka T.L.N., Appellant.
2005817501, 2005817502; Petition Number 104029M; A139023.
Court of Appeals of Oregon.
Argued and Submitted on November 10, 2008.
Decided February 25, 2009.
*263 Megan L. Jacquot argued the cause and filed the brief for appellant.
Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Christa Obold-Eshleman argued the cause and filed the brief for Child L.N.
Before LANDAU, Presiding Judge, and SCHUMAN, Judge, and ORTEGA, Judge.
LANDAU, P.J.
Mother appeals a judgment terminating her parental rights to her two children, L and A, on the grounds of neglect and unfitness. She contends that (1) the trial court erred in terminating on the ground of neglect; (2) the state made inadequate efforts to provide services to her; (3) termination was not in the best interests of the children; and (4) she received inadequate assistance of counsel. The state concedes that the trial court erred in terminating mother's parental rights on the ground of neglect, but argues that the judgment should be affirmed because there is no challenge to the alternative ground of unfitness and because mother's remaining contentions are without merit.
We agree with and accept the state's concession that the trial court erred in terminating mother's parental rights on the ground of neglect. We also agree with the state's contention that the judgment nevertheless may be affirmed on the ground of mother's unfitness.
In determining unfitness, ORS 419B.504 requires the court to determine whether the parent has engaged in conduct or is characterized by a condition that is seriously detrimental to the child. Among the criteria that the court must consider in determining fitness is the "failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected." ORS 419B.504(5). If the parent is unfit, the court must determine whether it is improbable that the child will, within a reasonable time, be integrated into the parent's home. State ex rel Dept. of Human Services v. Smith, 338 Or. 58, 80-81, 106 P.3d 627 (2005). The final inquiry is whether termination of parental rights is in the best interests of the child. ORS 419B.500; State ex rel Dept. of Human Services v. Cain, 210 Or.App. 237, 260, 150 P.3d 439 (2006), rev. den., 342 Or. 503, 155 P.3d 874 (2007).
One of the children in this case, the two-year-old daughter, A, is eligible for enrollment in the Cheyenne Arapaho Tribe of Oklahoma. Accordingly, as to that child, the Indian Child Welfare Act (ICWA) applies. Among other things, ICWA requiresin addition to the foregoing showingthat the state demonstrate that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d). The "active efforts" standard is understood to impose on the agency an obligation greater than simply creating a reunification plan and requiring the client to execute it independently. Active effort means that the agency must assist the client through the steps of a reunification. See *264 A.M. v. State, 945 P.2d 296, 306 (Alaska 1997).
In this case, mother has a long history of untreated mental illness, including psychosis and paranoia, and residential instability or homelessness, and has received services since shortly after the birth of L, who was removed from the home in November 2005, at the age of six. A was born in August 2006, and immediately placed in the same foster care home as L. Mother does not challenge the determination that she engaged in some conduct, or that she is characterized by a condition, that is seriously detrimental to the children. Her only contention is that the Department of Human Services (DHS) failed to make reasonable or active efforts to return the children to her home after removal. Specifically, mother contends that she should have been offered therapeutic visits with L, family counseling, and additional housing options after a first program was unsuccessful due to mother's behavior, and that the services that were offered were not provided for a sufficient length of time to determine that there could be no lasting adjustment by mother.
We note, initially, that as to Lwho is not subject to ICWAORS 419B.504(5) applies, and that statute merely states as one factor to be considered whether a parent has failed to make a lasting adjustment after available social agencies have made reasonable efforts. Mother has not assigned error to the trial court's determination that, based on an evaluation of all the relevant factors under ORS 419B.504(5), she is unfit. Her complaint about the need for additional efforts with respect to L, as a result, is academic.
In any event, on de novo review of the record, we find that the state has established that, for a period of at least two years, DHS engaged in reasonable and active efforts to provide services to mother, directed at both her housing situation and the treatment of her mental illness. Mother was hostile and resistant to any intervention by DHS. That resistance was exacerbated by her severe mental illness and her refusal to provide DHS any information as to her whereabouts.
DHS, for example, offered her domestic violence classes at DHS's expense (the program ordinarily requires participants to pay their own way). Mother did not follow through, however, taking six months simply to complete the initial intake evaluation. Mother's conduct eventually led to her discharge from the program.
In a similar vein, DHS made arrangements for a psychological evaluation. On the day of the evaluation, mother left a message refusing to participate. When her caseworker called and offered to drive her to the evaluation, mother again refused. Mother eventually was evaluated, but she persistently refused to participate in the recommended therapy; in the course of nine months, she attended three sessions. Meanwhile, she simply refused to meet with her caseworker or discuss her need for additional services.
As for housing, DHS enrolled mother in a transitional housing program. Mother, however, was evicted from that housing after behaving violently and becoming intoxicated, in violation of program rules. DHS arranged for alternate housing in another transitional housing program, but, because of her lack of cooperation, she was denied admittance to the program.
In short, DHS did not fail to engage in reasonable and active efforts, and the trial court did not err in so finding.
Mother also contends that the trial court erred in finding that termination of her parental rights was in the best interests of the children and that she was denied adequate assistance of counsel. We have considered and reject each of those assignments without further discussion.
Affirmed.