Submitted January 17, affirmed April 5, 2023

In the Matter of R. M. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. B.,
*Appellant.*

Columbia County Circuit Court
20JU02052; A178633 (Control)

In the Matter of A. G. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. B.,
*Appellant.*

Columbia County Circuit Court
20JU02053; A178634

528 P3d 808

Mother appeals from a permanency judgment changing the permanency plan for R and A from reunification to guardianship. Both children are Indian children within the meaning of the Oregon Indian Child Welfare Act and the federal Indian Child Welfare Act. Mother argues that the juvenile court erred by ruling that the Department of Human Services made active efforts to reunify the family and by changing the plan for both children. *Held*: The juvenile court's active efforts findings were supported by the record, and it did not err when it changed the permanency plan for each child.

Affirmed.

Michael T. Clarke, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sean Connor, Deputy Public Defender, Office of Public Defense Services filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kirsten M. Naito, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

This is a juvenile dependency proceeding that concerns mother's children, R and A, both of whom are Indian children within the meaning of the Oregon Indian Child Welfare Act (ORICWA) and the federal Indian Child Welfare Act (ICWA). *See* ORS 419B.600 - 419B.665; Indian Child Welfare Act of 1978, 25 USC §§ 1901 - 1963. Mother appeals from a permanency judgment that changed the permanency plan for R and A from reunification to guardianship. R was 10 years old and A was 11 years old at the time of the permanency hearing. Mother asserts four assignments of error, two for each child, each of which mirrors the assignments for the other child: that the juvenile court erred in ruling that the Department of Human Services' (DHS) efforts to reunify mother and her children qualified as "active," and in changing R's and A's permanency plans from reunification to guardianship. We conclude that the juvenile court's active efforts findings were supported by the record and that it did not err when it changed the permanency plan for each child. We affirm.

"[W]e review the juvenile court's legal conclusions for errors of law and are bound by its findings of historical fact if there is any evidence in the record to support them." *Dept. of Human Services v. J. G.*, 260 Or App 500, 504, 317 P3d 936 (2014).

Given that this is an ORICWA case, and because the permanency plan at the time of the permanency hearing was reunification, the juvenile court was required to determine whether DHS had made "active efforts" to reunite R and A with their mother. ORS 419B.476(2)(a). It was not authorized to change the plan away from reunification unless it could find that DHS had "provid[ed] active efforts to make it possible for [R and A] to safely return home[.]" ORS 419B.476(7)(b).

"Active efforts" are efforts that are "affirmative, active, thorough, timely and intended to maintain or reunite an Indian child with the Indian child's family." ORS 419B.645(1). "Active efforts require a higher standard of conduct than reasonable efforts." ORS 419B.645(3). That "standard is understood to impose on the agency an

obligation greater than simply creating a reunification plan and requiring the client to execute it independently." *State ex rel Juv. Dept. v. T. N.*, 226 Or App 121, 124, 203 P3d 262, *rev den*, 346 Or 257 (2009). Instead, DHS must "assist the client through the steps of a reunification." *Id.* "The type and sufficiency of effort that DHS is required to make depends on the particular circumstances of the case." *Dept. of Human Services v. D. L. H.*, 251 Or App 787, 799, 284 P3d 1233, *aff'd on recons*, 253 Or App 600, 292 P3d 565 (2012), *rev den*, 353 Or 445 (2013). To determine whether efforts were active, a juvenile court will consider "whether a parent is likely to benefit from a service." *Dept. of Human Services v. M. K.*, 257 Or App 409, 416, 306 P3d 763 (2013).

On appeal, mother argues that the juvenile court erred by concluding that DHS's efforts qualified as active because DHS failed to provide her with a second neuropsychological examination and other services that had been suggested by mother's counselor, and in changing the plan for the children to guardianship. Those rulings occurred in the context of a regularly scheduled annual permanency hearing under ORS 419B.470(7). DHS had not requested a change in plan; however, at the beginning of the hearing, R's attorney informed the court and the parties that R wanted to change the plan to adoption. The court acknowledged "that information" and proceeded with the hearing. Both DHS and mother were prepared with witnesses who testified about the efforts made by DHS and the progress made by mother, and then mother testified. At the close of evidence, the court took up the question of whether the plan could be changed that day. The court appointed special advocate (CASA) ultimately made an oral motion during that hearing to change the plan for both children from reunification to guardianship. DHS informed the juvenile court that it was not prepared to request a change in plan at that time because it had not yet followed its own internal process to obtain approval from the agency's guardianship committee, but that it did not object to the CASA's motion to change the plan. The tribal representative provided the tribe's support for a change in plan from reunification to guardianship. R's counsel clarified that, while R preferred adoption, she would not object to a change of plan to guardianship.

Ultimately, the juvenile court determined that DHS had used active efforts to reunify R and A with their mother, but that, despite those efforts, mother had not made sufficient progress to allow her children to return safely home. The juvenile court then changed the plan to guardianship. There was discussion that the focus of the case would change to support the new plan of guardianship given the change in permanency plan. The court nevertheless directed DHS to continue working with mother and to move forward in trying to provide her with a second neuropsychological evaluation. The juvenile court's findings and permanency judgment met the requirements of ORS 419B.476(5)(k), which places the onus on the court to determine, by clear and convincing evidence, that active efforts were provided; that, despite those efforts, continued removal is necessary to prevent serious damage to the child; that the parent has not made sufficient progress to allow the child to safely return home; and that the new permanency plan complies with the placement preferences outlined in ORS 419B.654.

The permanency hearing in question occurred 25 months after R and A were removed from mother's care and 21 months after jurisdiction was established. The permanency judgment included, among other things, the juvenile court's findings regarding the reunification services that DHS had arranged for mother and for R and A. The court found that DHS had developed a safety plan for the family and had arranged for and facilitated contact between mother and the children, in-person and remotely, using professional supervisors and parent trainers. The court found that mother had visited with A 58 times and with R 54 times at that point in the case. DHS had arranged for alcohol and drug evaluation and treatment, psychological evaluation and treatment, mental health counseling, housing assistance, transportation assistance, and other in-home safety and reunification services. The court also adopted and included in its active efforts findings the description of DHS efforts reflected in (1) a letter from mother's specialized parent coach from Wise Choice Educational Solutions describing six parent coaching sessions and other "consultations," (2) the DHS Family Report prepared for the permanency hearing, and (3) the CASA's most recent findings

and recommendations contained in her report, detailing the efforts mentioned already as well as significant efforts used to actively involve the children's tribe in family reunification work, all of which were offered and received by the court as evidence.

Having reviewed the record, we conclude that the juvenile court did not err in making an active efforts determination and it did not err when it changed the permanency plan to guardianship. DHS actively worked with mother, her children, and the tribe toward reunification through services that were specific to the circumstances that led to jurisdiction in the first place.[1] Mother acknowledges that DHS was unable to immediately provide her with a second neuropsychological evaluation because its policy is to provide one evaluation every two years. She also acknowledges certain contractual limitations with respect to DHS's ability to provide further specialized parent coaching through Wise Choice. But mother contends that DHS nevertheless fell short of its active efforts obligation despite those policy and contractual limitations. She argues that the juvenile court's analysis was flawed in assessing DHS's failure to arrange for a second neuropsychological evaluation and other specific therapies given DHS's legal obligation to use active, and not merely reasonable, efforts.

In mother's view, the court failed to do the proper "cost-benefit analysis" when it evaluated whether DHS's efforts "gave mother an opportunity to ameliorate the jurisdictional bases" specifically by balancing its burden in providing those services with the benefit that mother might reasonably get from them. In the absence of any evidence from DHS that it was "unable []as opposed to unwilling[]" to provide mother with certain services, she argues, the court should not have made an active efforts finding. *See Dept. of Human Services v. K. G. T.*, 306 Or App 368, 473 P3d 131 (2020) (concluding that, because DHS failed to explore alternate service options while father was incarcerated,

---

[1] In asserting jurisdiction, the juvenile court relied on mother's admissions that she had mental health issues that interfered with her ability to safely parent R and A and also that she needs the assistance of DHS to meet R's and A's physical and emotional needs.

the court was required to conduct a "cost-benefit analysis" to determine whether DHS could have provided other services within reason, and a failure to conduct that analysis required reversal).

Mother's argument misses the point. The juvenile court made its active efforts determination giving proper consideration to the services that mother had been offered in conjunction with its consideration of evidence concerning mother's progress given those services. The court stated:

> "[I]t sure does not look to me that [mother] will, despite any other reunification efforts, will be able to get to a point [of minimal adequacy]. *** I have specifically ordered [mother] a number of times not to do certain things.
>
> "*** I just don't believe that she is ever going to get to a point [of minimal adequacy]. Now, I don't think that *** ODHS should stop providing services and doing everything that they can to help her ***."

The juvenile court made clear findings that mother was offered several services but had still not made progress toward minimal adequacy. There is no indication in this record that mother would benefit from additional services that were not explored due to a "cost-benefit analysis" or because of an unwillingness by DHS to provide a service that could have been helpful to mother.

We acknowledge that an internal DHS policy is not, on its own, a sufficient reason to not provide a necessary service to a parent, especially in a case requiring active efforts. However, given the entirety of this record, we do not find that DHS's failure to request a policy exception or to otherwise arrange for a second evaluation prior to the permanency hearing shows a lack of active efforts on its part. Rather, the court concluded that mother was unlikely to benefit from any service DHS might offer in light of her lack of progress up to the point of the hearing. The fact that mother might benefit from specific therapies according to her counselor does not mean that DHS was required to provide those services, particularly given mother's lack of progress despite the extensive efforts DHS had already made. The record supports the juvenile court's active efforts finding.

It follows that the court did not err in changing the plan to guardianship.

Affirmed.