A157977 and A157952 (Control)/A157978 argued and submitted individually April 14, 2015, affirmed in A157952, A157977, and A157978 May 18, petitions for review denied September 27, 2016 (360 Or 422)

In the Matter of A. R. V. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner below,*

*and*

A. R. V. S.,
*Appellant,*

*v.*

S. R. H.,
*Respondent.*

In the Matter of A. R. V. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

A. R. V. S.,
*Respondent,*

*v.*

S. R. H.,
*Appellant.*

Lane County Circuit Court 11088J;
Petition Number 11088J01;
A157977

In the Matter of J. R. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner below,*

*and*

J. R. H.,
*Appellant,*

*v.*

S. R. H. and J. D. H.,
*Respondents.*

In the Matter of J. R. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

J. R. H.,
*Respondent,*

*v.*

S. R. H. and J. D. H.,
*Appellants.*

Lane County Circuit Court 11089J;
Petition Number 11089J01;
A157952 (Control), A157978

381 P3d 1059

In A157977, Valerie Colas, Deputy Public Defender, argued the cause for appellant S. R. H. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

In A157977, Ginger Fitch argued the cause and filed the briefs for appellant-respondent A. R. V. S.

In A157977, Erin K. Galli, Assistant Attorney General, argued the cause for respondent Department of Human Services. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

In A157952, Megan L. Jacquot filed the brief for appellant J. D. H.

In A157978, Valerie Colas, Deputy Public Defender, argued the cause for appellant S. R. H. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

In A157978, Ginger Fitch argued the cause and filed the briefs for appellant-respondent J. R. H.

In A157952 and A157978, Erin K. Galli, Assistant Attorney General, argued the cause for respondent Department of Human Services. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Lagesen, Presiding Judge, and Flynn, Judge, and Haselton, Senior Judge.*

---

* Haselton, S. J., *vice* Duncan, J.

## HASELTON, S. J.

These separate juvenile dependency appeals, consolidated for purposes of this opinion only, involve two Indian children, A and J, and arise from judgments continuing jurisdiction as to each child and continuing, as to each child, a permanency plan of "another planned permanent living arrangement" (APPLA), ORS 419B.476(5)(f). Mother, father, A, and J all appeal.[1] Mother assigns error to the juvenile court's denial of her "motion[s] to dismiss" the predicate dependency proceedings based on purported noncompliance with the Indian Child Welfare Act (ICWA), 25 USC §§ 1901-1963, including requirements that apply when the court "knows or has reason to know that an Indian child is involved," 25 USC § 1912. Mother contends that, as a result of the court's error, the proceedings are invalid and the jurisdictional petitions must be dismissed as void. Father joins in mother's arguments and, alternatively, contends that, even if dismissal is not required, the case must be remanded with instructions for the juvenile court to make an "active efforts" determination pursuant to 25 USC section 912(d). A and J each contend that the juvenile court erred in determining that "compelling reasons," ORS 419B.476(5)(f), precluded changing the permanency plan from APPLA to adoption.

As amplified below, we reject each of those challenges. Specifically: (1) The juvenile court did not err in denying parents' motions to dismiss, because the record did not substantiate the essential premise of those motions, *viz.*, that, as of May 9, 2011, when the court found jurisdiction and directed that A and J be placed in foster care, the court knew or had reason to know that "an Indian child [was] involved." ORS 419B.878. Accordingly, ICWA was, at that time, inapplicable. (2) Similarly, a remand to the juvenile court to make an "active efforts" determination would be appropriate only if, as of the time the court changed J's permanency plan from reunification to APPLA (in June

---

[1] A's biological father has not appeared and is not involved in this proceeding. In this opinion, we refer to J's father, who is married to mother, as "father," and to mother and father together as "parents." Father's appeal of the disposition as to J is A157952, and mother's and J's appeal of that disposition is A157978 (with A157952 being designated as the "control" for that matter). Mother's and A's appeal of the disposition as to A is A157977.

2012), the court knew or had reason to know that J was an Indian child, triggering ICWA's requirements; again, the record does not substantiate that premise. (3) Finally, the juvenile court did not err in determining that, in the totality of the circumstances, deferring action pending the tribe's "express[ion of] an opinion as to adoption" constituted a compelling reason for not immediately changing the children's permanency plan from APPLA to adoption. Accordingly, we affirm.

In juvenile proceedings that do not involve the termination of parental rights, it is within this court's discretion to review the record *de novo*. ORS 19.415(3). The parties do not seek *de novo* review, and we conclude that this is not an exceptional case that justifies *de novo* review. *See* ORAP 5.40(8)(c), (d). Accordingly, in reviewing the juvenile court's judgments, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Thus, here, as in every case, our threshold "statement of facts" is, necessarily, a statement of *material* facts— that is, our narrative is, at least implicitly, informed by, and circumscribed by, an assessment of legal materiality. Here, for reasons that will become apparent presently, *see* 278 Or App at 438-42, the significance of various events and circumstances is properly assessed by reference to two benchmarks: the juvenile court's assumption of jurisdiction on May 9, 2011, and the change of the permanency plan from reunification to APPLA on June 19, 2012.

With that understanding, the record discloses the following material facts. In 2004, long before the initiation of this dependency proceeding in 2011, mother had contact with the Department of Human Services (DHS) in connection with a child welfare assessment of A and A's older sister, R.[2] At that time, mother indicated that she had an affiliation with the Karuk Indian tribe, and DHS, after making

---

[2] At that time, A was four years old. J was born in 2007.

a preliminary notation of tribal affiliation in its database, contacted the tribe regarding membership eligibility for A and R. The tribe's enrollment officer responded by letter, on December 15, 2004, that mother is a "documented descendent" but *"does not meet the Karuk Blood Degree requirement for [tribal] membership."* (Emphasis added.) The letter further stated that A and R "are not Karuk Tribal members" and "do not qualify for ICWA."[3]

In February 2011, A and J came into protective custody when they were removed from the family home based on concerns about abuse and neglect as a result of father's suspected sexual abuse of R and two of his daughters from a prior relationship, and mother's substance abuse, mental health, and inability to protect the children from father. A and J were placed in shelter care with the foster parents with whom they have resided since that time and who are now a prospective adoptive placement.

At the time of the children's removal, the "Karuk Tribe" notation from 2004 automatically "popped up" in DHS's database. Accordingly, the caseworker asked mother about tribal membership, and mother responded that she had a membership card but did not know if she was enrolled in the tribe. However, mother refused to complete any ICWA-related forms; although the DHS caseworker dropped ICWA forms off at the office of an attorney who was representing parents at that time, those forms were never completed and returned. The shelter order of February 23, 2011, stated that DHS had not yet made "full inquiry" about ICWA.

The court assumed jurisdiction on May 9, 2011, under ORS 419B.100(1)(c), with a permanency plan of reunification. The issue of ICWA applicability was not raised at the hearing, either by parents or by DHS, and the jurisdictional and dispositional judgments did not mention ICWA.[4] The court ordered the children to be placed in foster care and directed parents to participate in services. However, the

---

[3] The initial notation, "Karuk Tribe," was retained in DHS's computer system, without any reference to the subsequent inquiry and the tribe's negative response.

[4] Mother appealed from the jurisdictional judgments, which this court affirmed without opinion. *Dept. of Human Services v. S. R. H.*, 249 Or App 180, 276 P3d 1126 (2012).

parents subsequently declined to engage in court-ordered services and requested that the court not continue to order participation in such services.

On June 1, 2011, a new caseworker was able to get parents to complete forms entitled "Verification of ICWA Eligibility." In response to the question "Do you have any American Indian or Alaskan Native Ancestry?", they answered "No." At no time thereafter until July 2013, did mother mention Indian tribal heritage or possible tribal membership to DHS personnel.

After a disposition review hearing in February 2012, the court continued jurisdiction, ordered that the children continue in their foster care placement, and ordered the parents to participate in services. The judgments made no mention of ICWA.

In May 2012, mother received an enrollment card from the Karuk Tribe that identified her as an "Enrolled Descendent Tribal Member." Mother did not notify DHS of that fact.

At the first permanency hearing on June 11, 2012, no party mentioned ICWA. In its consequent permanency judgments issued on June 19, 2012, the court changed the children's plan from reunification to APPLA.[5] The court found that DHS had made the required reasonable efforts to reunify the family, but that parents were refusing services and had failed to ameliorate the issues that had caused a threat of harm to the children. The court ordered that DHS was not required to provide further services to parents. The court found that the children were thriving in their foster placement, but declined to order adoption at that time, finding that adoption was not appropriate because of each child's "attachment to parent and * * * sibling." With respect to A, the court found that A "does know that adoption is alternative and she is ambivalent about whether she wants to be adopted or not." Accordingly, the court changed the permanency plan from reunification to APPLA.[6]

---

[5] Those judgments expressly stated that ICWA did not apply.

[6] Mother appealed from the June 19, 2012, permanency judgments, which this court affirmed without opinion. *State v. A. R.*, 254 Or App 757, 297 P3d 35 (2013).

The next permanency hearing occurred in June 2013. In the consequent permanency judgments, the court continued the permanency plan of APPLA and made findings similar to those made in the previous judgments explaining why adoption was not appropriate.[7]

In July 2013, mother told her DHS caseworker that a tribe would be contacting DHS, but that she did not know which tribe. The caseworker helped mother complete an ICWA eligibility form. The Karuk Tribe contacted DHS in August 2013, requesting additional information, and, in October 2013, the Karuk Tribe notified DHS that A and J (like mother) qualified as "Enrolled Descendent Tribal Members" but not as "Enrolled Tribal Members."[8] From that time forward, DHS regarded A and J as Indian children and considered the matter to be subject to ICWA.[9]

On June 18, 2014, mother filed motions to dismiss the jurisdictional petitions as to each child based on purported noncompliance with ICWA. Specifically, mother contended that "the court's jurisdiction over the child[ren] is inappropriate" because the court had predicated its threshold jurisdictional determination on a preponderance of the evidence standard rather than ICWA's "clear and convincing evidence" standard. See 25 USC § 1912(e).

The filing of mother's motions coincided with the third permanency hearing, which also occurred on June 18. In the consequent permanency judgments, the juvenile court: (1) stated, for the first time, that ICWA applied to the proceedings; (2) deferred consideration of mother's motions pending more complete development of the record as to when DHS knew, or should have known, that the children were Indian children; and (3) continued the permanency plans of APPLA, notwithstanding DHS's and the children's

---

[7] On mother's appeal, this court affirmed the June 2013, permanency judgments without opinion. *Dept. of Human Services v. S. R. H.*, 260 Or App 562, 318 P3d 1146 (2014).

[8] As enrolled descendant members, mother and the children are entitled to certain social services.

[9] ICWA, 25 USC section 1903(4), defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian Tribe and is the biological child of a member of an Indian tribe."

requests that the plans be changed to adoption. With regard to ICWA's applicability at that time, the court observed that "the record at this time supports a finding that this was not an ICWA case prior to late 2013."

On August 22, 2014, the court held the permanency hearing that yielded the September 11, 2014, permanency judgments which are the subject of this appeal. At that hearing, the parties presented evidence pertaining to parents' motions to dismiss on ICWA grounds,[10] as well as DHS's and the children's renewed request to change the permanency plan to adoption. During that hearing, witnesses testified as to the circumstances recounted above. In addition, England, a certified tribal expert—who, like mother and the children, is an enrolled descendent member of the Karuk Tribe— testified that the tribe would not intervene, did not object to the children's current placement, and took no position on adoption. England also testified that it was his opinion that it was in the children's best interests to stay in their current placement.[11]

In the September 11, 2014, permanency judgments now on appeal, the juvenile court, after noting the parties' dispute "as to when DHS knew or should have known about ICWA applicability," found that "the current record before the court established" that "this was not an ICWA case prior to late 2013" and, consequently, "a reasonable efforts standard was appropriately applied in prior hearings." Accordingly, the court continued jurisdiction, by necessary implication denying parents' motions to dismiss. The court checked a box on the judgments indicating that, because the children were Indian children, it made its findings based on clear

---

[10] Following the June 18, 2014, hearing, father had joined in mother's motion with respect to J.

[11] In a declaration supplementing his testimony, England described the services that had been offered to the family and expressed his opinion that DHS had made "active efforts" to prevent the breakup of the family. England further stated:

"The children are safe, well cared for, and receiving a well rounded system of care that is currently meeting their psychological, emotional, educational, and social needs. I am hopeful that this will not be hampered, changed, or disrupted in any way. In the spirit of the Indian Child Welfare Act it is very clear that not all situations include staying with our biological families."

and convincing evidence. The court once again rejected the request by DHS and the children that the permanency plan be changed to adoption, and continued the permanency plan of APPLA, finding with respect to each child:

"The child and sibling have been in this permanent foster care placement for the past thirty-nine months. This has been the child's only placement since coming into care on this petition. * * * The child now qualifies as an Enrolled Descendant Tribal Member. The Tribe has not intervened at this point. DHS called a Tribal Expert to testify. The Court finds that witness, Richard England, to be credible. While the Tribe would prefer a relative placement, given the fact that the child and sibling have been placed together in this long-term, positive placement, DHS would prefer to keep the children together in their stable placement while working to locate a relative resource. Mr. England testified that the child would likely suffer serious physical or emotional damage if returned to Mother or Father's care at this time. The Tribe has not objected to the current plan or placement. Additionally, foster parent presented as willing and committed to facilitating tribal connections and education for the child given the current status of the case. The tribal expert, Richard England, testified in support of the current placement and indicated that the Tribe supported the current placement. DHS requested a change of plan to adoption at the hearing."

In rejecting DHS's and the children's request to change the plan to adoption, the court explained that "Mr. England reported that the Tribe did not express an opinion on adoption. Therefore, the Court is unable to ascertain the Tribe's position on DHS' request." Accordingly, the court declined to change the plan to adoption "without direct input from the Tribe."

As noted, mother, father, and the children all appeal. In their appeals, parents challenge the juvenile court's denial of their motions to dismiss. Father further contends that, even if we affirm the court in that regard, the case must be remanded for the juvenile court to determine whether DHS made "active efforts" to provide services and programs to prevent the breakup of the family. The children also appeal, contending (in arguments in which DHS joins)

that the juvenile court erred in not changing the permanency plan to adoption.

We begin with the parents' appeals. Before addressing the particular merits, however, we summarize, as useful context, some principles pertaining to ICWA's application.

When a court conducts a hearing relating to involuntary child custody, the court is required to inquire whether a child is an Indian child subject to ICWA. ORS 419B.878. If the court "knows or has reason to know that an Indian child is involved," the court must order DHS to notify the tribe of the pending proceeding and of the tribe's right to intervene, and the case is to be treated as an ICWA case "until such time as the court determines that the case is not" an ICWA case. *Id.* The tribe makes the determination whether a child is an Indian child as defined in ICWA. *Santa Clara Pueblo v. Martinez*, 436 US 49, 72 n 32, 98 S Ct 1670, 56 L Ed 106 (1978). Further, and significantly, under Bureau of Indian Affairs ICWA guidelines, if a public child-protective agency "has discovered information which suggests that a child is an Indian child," that knowledge is constructively imputed to the juvenile court. *See* Bureau of Indian Affairs *Guidelines for State Courts; Indian Child Custody Proceedings* B.1, 44 Federal Reg 67592 (Nov 26 1979) (BIA Guidelines).[12]

When a custody proceeding involves removal of an Indian child, several additional procedural requirements are applicable. ICWA requires that the tribe be given notice and requires a finding by the court that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 USC § 1912(a), (d); ORS 419B.476(2)(a) (at a permanency hearing in an ICWA case, when the plan is reunification, the court must determine whether DHS has made active efforts to make it possible for the child to safely return home). A

---

[12] In *Quinn v. Walters*, 320 Or 233, 262, 881 P2d 795 (1994), the Supreme Court said that, although BIA Guidelines are not binding on the court, they provide essential guidance to a state's proper application of ICWA.

In 2015, the BIA published revised guidelines. 80 Fed Reg 10146-59 (Feb 25, 2015). Because those guidelines were promulgated after the date of the proceedings at issue here and do not purport to be retroactive, we refer only to the 1979 guidelines.

court may not award custody of an Indian child to DHS or order placement of an Indian child in foster care without "clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 USC § 1912(e); *see* ORS 419B.340(1), (7).[13]

An Indian child, parent, or tribe may petition a court of competent jurisdiction to invalidate an action taken in violation of ICWA. 25 USC § 1914.[14] The party asserting ICWA's applicability bears the burden of making a *prima facie* case that a child is an Indian child. *Hofmann v. Anderson*, 176 Or App 311, 314-15, 31 P3d 510 (2001).

Parents contend that the juvenile court erred in denying their motions to dismiss because, in February 2011, even before the jurisdictional petitions were filed, DHS "knew or had reason to know" that the case involved Indian children, when it noticed in its records a reference to mother's Karuk heritage—and, pursuant to BIA Guidelines B.1, DHS's knowledge is imputed to the juvenile court. *See* 278 Or App at 437. In that regard, parents emphasize

---

[13] ORS 419B.340(7) provides:

"When an Indian child is involved, the department must satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proven unsuccessful. Foster care placement may not be ordered in a proceeding in the absence of a determination, supported by clear and convincing evidence, including the testimony of expert witnesses, that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical injury to the Indian child."

[14] 25 USC section 1914 provides:

"Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provisions of sections 1911, 1912, and 1913 of this title."

The parties dispute whether, or to what extent, a court may have discretion under section 1914 not to invalidate an action taken in violation of ICWA. Given our analysis and disposition, we need not resolve that dispute. *See generally Dept. of Human Services v. J. G.*, 260 Or App 500, 511-12, 317 P3d 936 (2014) (addressing intended purpose of section 1914).

uncontroverted testimony that (1) when the children were removed in February 2011, mother told a DHS caseworker that she had a tribal membership card; and (2) before the jurisdictional petitions were filed, the caseworker had an "indication that ICWA applied" when the 2004 "Karuk Tribe" notation "popped up" in DHS's database. Thus, parents reason, the jurisdictional judgments must be vacated because, as of the time those judgments were entered in May 2011, the juvenile court had (by way of imputed knowledge via DHS) reason to believe that the children were Indian children and, nevertheless, in violation of ICWA, established jurisdiction based on a preponderance of the evidence standard rather than the "clear and convincing evidence" standard required under ICWA. *See* 25 USC § 1912(e).

Parents' position depends on a selective understanding of the record before the juvenile court. Specifically, as noted, testimony at the August 22, 2014, hearing established that the "Karuk Tribe" notation for mother in DHS's database had been entered, as a preliminary matter, in 2004, but that, in response to subsequent, contemporaneous inquiries from DHS, the tribe had explicitly denied that mother or her children met the requirements for tribal membership. *See* 278 Or App at 431-32. That negative response—a response within DHS's constructive knowledge in 2011—negated the 2004 preliminary notation. Further, the record established that, while that notation automatically "popped up," there was no evidence that it had ever been renewed or supplemented based on any subsequent information. Similarly, parents' reliance on mother's reference to having a tribal membership card does not engage with the complete context that, at the same time mother made that remark in February 2011, she was adamantly refusing to complete ICWA-related forms provided by DHS. Indeed, mother did not obtain a tribal membership card until May 2012—and, even then, did not so inform DHS.[15] Given the totality of the circumstances, the juvenile court did not err in denying

---

[15] Although parents, as the parties invoking ICWA, had the burden of *prima facie* proof as to ICWA's applicability, *see Hofmann*, 176 Or App at 314-15, they presented *no* evidence that mother was eligible for Karuk tribal membership at any time before May 2012. Similarly, there is no evidence in this record that A or J qualified for tribal membership at any time before October 2013.

parents' motions to dismiss. *See State ex rel Juv. Dept. v. Tucker,* 76 Or App 673, 677, 10 P2d 793 (1985), *rev den,* 300 Or 605 (1986) (affirming juvenile court's denial of petition to "invalidate" foster care placement based on purported ICWA noncompliance; record did not establish that, as of the time the child was placed, ICWA applied, and subsequent determination that the child was an Indian child did not render ICWA retroactively applicable to prior actions of the juvenile court).

Father contends, alternatively, that, even if the jurisdictional judgments are not invalid, once the juvenile court determined that the children were Indian children, it was obligated to revisit and reconsider the June 2012 change of plan from reunification to APPLA. Specifically, father contends that, because no "active efforts" determination under ICWA, 25 USC section 1912(d), has ever been made in these cases, now that the children have been found to be Indian children, such a determination must be made in the first instance.

In assessing that contention, we emphasize that between May 2011, (when the court assumed jurisdiction) and June 2012, (when the permanency plan was changed from reunification to APPLA), the only additional information or development bearing on DHS's knowledge as to whether A and J were Indian children was mother's execution of the ICWA form in June 2011, in which she expressly *denied* having Native American or Alaskan American ancestry. Thus, as of June 19, 2012—just as on May 9, 2011—the juvenile court had no reason to know, by way of imputed knowledge, that the children might be Indian children, triggering ICWA's requirements. Because ICWA was not yet applicable at the time either of the May 2011 placement decision or of the June 2012 change to APPLA, the juvenile court was not required under either the Oregon dependency statutes or ICWA itself to make an "active efforts" finding. Further, the court's ultimate determination that the children were Indian children did not render ICWA retroactively applicable to those earlier decisions, specifically including the June 19, 2012, change of plan. *See Tucker,* 76 Or App at 677.

Under ORS 419B.476(2)(a), when the case plan at the time of the hearing is reunification and ICWA does *not* apply, in order to change to a plan other than reunification, the court must find that DHS made "reasonable efforts."[16] Because the record fails to establish ICWA's applicability as of the time of June 2012 permanency judgments, the juvenile court properly applied a "reasonable efforts" standard, without reference to "active efforts," in changing the permanency plans for the children from reunification to APPLA. Again, the fact that ICWA subsequently became applicable did not compel the court to revisit that June 2012 determination. *See Tucker*, 76 Or App at 679 (applicability of ICWA after foster care placement did not require the juvenile court to set aside the foster care placement made before ICWA was applicable).

When the case plan at the time of the hearing is other than to reunify the family, the focus is on whether DHS has made reasonable efforts to place the ward in a timely manner in accordance with the plan. ORS 419B.476(2)(c); *Dept. of Human Services v. C. L.*, 254 Or App 203, 212, 295 P3d 72 (2012), *rev den* 353 Or 445 (2013) (when permanency plan at time of hearing is not reunification, the "reasonable efforts" and "sufficient progress" standards in ORS 419B.476(2)(a) do not apply). When the permanency plan is APPLA, the question is whether DHS "has made reasonable efforts to place the ward in a timely manner in accordance with the plan[.]" ORS 419B.476(2)(b). Reasonable efforts in accordance with an APPLA plan are DHS's reasonable efforts to find a permanent foster placement for the child. *C. L.*, 254 Or App at 212. That is the standard that applied when the court issued its subsequent (post-July 2012) permanency judgments, including the September 2014 judgments at

---

[16] ORS 419B.476 provides, in part:

"(2) At a permanency hearing the court shall:

"(a) If the case plan at the time of the hearing is to reunify the family, determine whether the Department of Human Services has made reasonable efforts or, *if the Indian Child Welfare Act applies, active efforts* to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

(Emphasis added.)

issue here. In those judgments, the court determined that DHS met that standard, and that conclusion is not challenged on appeal.

Nothing in ICWA compels a different result. 25 USC section 1912(d) provides in part:

> "Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitate programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."

In turn, a "foster care placement," as defined in ICWA, is

> "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated."

25 USC § 1903(1)(i).

Given those provisions, *if* this had been an ICWA case at the time the juvenile court changed the permanency plan to APPLA, the court would have been required to make an "active efforts" finding. *See generally Dept. of Human Services v. J. G.*, 260 Or App 500, 515-20, 317 P3d 936 (2014) (addressing scope of "foster care placement" for purposes of 25 USC section 1912(d)). But, again, as the juvenile court determined, ICWA was inapplicable at that time—and the subsequent permanency judgments, including those at issue here, renewed the APPLA plan, without any change in the children's placement. Thus, so long as the predicate permanency plan of APPLA was continued without change—that is, without "effect[ing]" a foster placement"—ICWA section 1912(d) does not require an "active efforts" determination, notwithstanding that no such determination had been made previously.[17]

---

[17] We emphasize that the "active efforts" determination requirement remains applicable in the event of either a change in the character of the foster care placement, *e.g.*, to a permanent guardianship, *see J. G.*, 260 Or App at 515-20, or termination of parental rights. *See State ex rel Juv. Dept. v. T. N.*, 226 Or App 121, 124, 203 P3d 262, *rev den*, 346 Or 257 (2009). Indeed, we take judicial notice that, on November 19, 2015, during the pendency of this appeal, the juvenile court

Finally, we address the children's challenge to the juvenile court's continuation of the permanency plan of APPLA rather than changing the plan to adoption. As noted, the juvenile court determined not to make a change in the permanency plan because the case had recently been determined to be subject to ICWA and because the Karuk Tribe had not stated a position on adoption. The children emphasize that DHS considers APPLA to be the least preferred permanency plan. *See* OAR 413-070-0525(1) (describing APPLA as the "least preferred permanency plan").[18] They also point to the requirement in ORS 419B.476(5)(f) that, when the court determines that the permanency plan is APPLA, the court is required to state a "compelling reason" why it is not in the children's best interests to impose some other plan, including adoption. The children take the position on appeal that, in the absence of an objection from the Tribe, there is no evidence or legal basis on which the court could conclude under ORS 419B.476 that there was a compelling reason to continue the plan of APPLA.

We disagree. ORS 419B.476(5)(f) provides that, if the court determines that the permanency plan for the ward would be a planned permanent living arrangement, the court's order must include:

> "the court's determination of a compelling reason, that must be documented by the department, why it would not be in the best interests of the ward to be returned home, placed for adoption, placed with a legal guardian or placed with a fit and willing relative."

---

entered a permanency judgment changing the children's plan from APPLA to a permanent guardianship (with their long-time foster parents as guardians), and, in so doing, made an "active efforts" determination under ICWA, 25 USC section 1912(d).

[18] Further, OAR 413-070-0556(1) provides:

"The Department may consider APPLA as a permanency plan for a child or young adult only if the Department has determined that there is a compelling reason that it is not in the best interest of the child to implement one of the following preferred permanency plans, listed in order of preference:

"(a) Placement with a parent;

"(b) Placement in an adoptive home which includes permanent placement with a fit and willing relative through adoption; or

"(c) Placement with a guardian which includes permanent placement with a fit and willing relative as a guardian."

To be sure, the children identify significant circumstances militating in favor of a change of plan from APPLA to adoption, including parents' refusal to engage in services, A's expressed desire to be adopted by her foster family, with whom she is closely bonded, and the foster parents' desire to adopt A and J.

The juvenile court was well aware of those circumstances, as evinced by its careful and detailed findings in the permanency judgments. Still, mindful of ICWA's purposes and of the potentially significant adverse consequences of proceeding without express tribal input, the court determined not to immediately change the plans to adoption but, instead, to defer pending such input. In the totality of the circumstances, we cannot say that the juvenile court's measured approach was erroneous. Accordingly, we affirm the continuation of the permanency plan of APPLA.

Affirmed in A157952, A157977, and A157978.