Argued and submitted February 17, reversed and remanded May 5, 2021

In the Matter of N. C. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

H. C. W.,
*Appellant.*

Josephine County Circuit Court
20JU01097; A174594

489 P3d 139

In this juvenile dependency case, mother appeals the trial court's determination that her child, N, is not an "Indian child," as defined in 25 USC section 1903(4) and, thus, that the Indian Child Welfare Act (ICWA) does not govern the case. Mother is a descendant member of the Karuk tribe, which has two types of membership: descendancy and fully enrolled membership. N is eligible for descendant membership but not eligible for fully enrolled membership. The trial court concluded that N did not qualify as an "Indian child" because N was not eligible for fully enrolled membership. *Held*: The plain text of 25 USC section 1903(4) only requires that a child be a "member" or eligible for "membership" and does not distinguish between types or tiers of "membership." Further, to the extent that the text leaves doubt, the well-established requirement that the court construe ambiguous provisions of the ICWA in favor of tribal interests compels the same conclusion. The trial court erred in concluding that N was not an "Indian child" and that ICWA did not apply in this case. The court's conclusion that the ICWA applies to this case obviates the need to address mother's remaining assignment of error.

Reversed and remanded.

Sarah E. McGlaughlin, Judge.

Kristen G. Williams argued the cause and filed the briefs for appellant.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

At issue is whether the Indian Child Welfare Act (ICWA) governs this juvenile dependency case. It involves a mother and child connected to the Karuk Tribe through descendancy. The question, in particular, is whether the child, N, is an "Indian child," as defined in 25 USC section 1903(4), by virtue of his mother's status as a descendant member of the Karuk Tribe together with N's own eligibility to become a descendant member too. We conclude that the plain text of 25 USC section 1903(4) makes the answer to that question yes, but that, even if the text leaves doubt, the well-established requirement that we construe ambiguous provisions of the ICWA in favor of tribal interests compels the same conclusion. Because the juvenile court determined otherwise and did not apply the ICWA, we reverse and remand. Our conclusion that the ICWA applies to this case obviates the need to address mother's remaining assignment of error.

Because the facts are undisputed, this ultimately presents a question of statutory construction. The ICWA is a federal statute, and, when we construe a federal statute, our goal is to give effect to congressional intent. To that end, "we follow the methodology prescribed by the federal courts. Federal courts generally determine the meaning of a statute by examining its text and structure and, if necessary, its legislative history." *Corp. of Presiding Bishop v. City of West Linn*, 338 Or 453, 463, 111 P3d 1123 (2005) (internal citation omitted).

Much in the same way our state courts interpret statutes by considering statutory text, in context, the Supreme Court "normally interprets a statute in accord with the ordinary public meaning of its terms at the time of enactment." *Bostock v. Clayton County, Georgia*, ___ US ___, 140 S Ct 1731, 1738, 207 L Ed 2d 218 (2020). Giving weight to the words of a statute above all else ensures that a court does not cross the line from interpreting statutory terms to "amending statutes outside the legislative process reserved for the people's representatives." *Id*. "[W]hen the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without

fearing that courts might disregard its plain terms based on some extratextual consideration." *Id.* at \_\_\_, 140 S Ct at 1749. When, however, the meaning of a provision of the ICWA is ambiguous, the Supreme Court has directed that ambiguities be resolved in favor of tribal interests. *Montana v. Blackfeet Tribe of Indians*, 471 US 759, 766, 105 S Ct 2399, 85 L Ed 2d 753 (1985) (explaining that ambiguous provisions in federal statutes that are passed for the benefit of Indian tribes should be construed liberally to favor Indian interests); *see also Native Vill. of Venetie I.R.A. Council v. Alaska*, 944 F2d 548, 553 (9th Cir 1991) (applying the *Blackfeet* presumption when choosing between two interpretations of the Indian Child Welfare Act of 1978).

Under the ICWA, in any involuntary child custody proceeding involving an "Indian child," a court must comply with certain federal requirements. An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian Tribe and is the biological child of a member of an Indian tribe." 25 USC § 1903(4). At issue here is whether N "is eligible for membership in an Indian Tribe and is the biological child of a member of an Indian Tribe."

Whether a person is a member of a tribe, or eligible for membership in a tribe, is a question of fact. *See State ex rel Juv. Dept. v. Tucker*, 76 Or App 673, 680, 710 P2d 793 (1985), *rev den*, 300 Or 605 (1986). A tribe's word on the matter of membership or eligibility for membership is conclusive on the point:

> "The determination by a Tribe of whether a child is a member, whether a child is eligible for membership, or whether a biological parent is a member, is solely within the jurisdiction and authority of the Tribe, except as otherwise provided by Federal or Tribal law. *The State court may not substitute its own determination regarding a child's membership in a Tribe, a child's eligibility for membership in a Tribe, or a parent's membership in a Tribe.*"

25 CFR § 23.108(b) (emphasis added).

Here, the facts, which are not disputed, show that mother is an enrolled descendant member of the Karuk Tribe, and that N is, himself, eligible for descendancy membership

in the Karuk Tribe. *See, e.g.*, *Dept. of Human Services v. S. R. H.*, 278 Or App 427, 434, 381 P3d 1059, *rev den*, 360 Or 422 (2016) (noting treatment of enrolled descendant members of the Karuk Tribe as "Indian Children" for purposes of ICWA).

Specifically, when notified about the proceeding, the tribe responded by letter. The letter noted five possibilities for N: "Member"; "Descendant"; "Eligible for Membership"; "Eligible for Descendancy"; "Not Eligible for Membership." It then explained that N was "Eligible for Descendancy." It stated further that, at the time, "we are not able to state whether or not the Karuk Tribe will intervene in the case. However, we do reserve the right to intervene at any time, and we do monitor all of our cases."

At the hearing, the tribe's expert, Maloney, elaborated on the tribe's membership structure. She testified that the Karuk Tribe distinguishes fully enrolled members from descendants. "A fully enrolled member *** meet[s] the blood quantum of being 1/8th degree[.]" "Descendancy" is "a second membership *** for descendants that don't meet the 1/8th blood quantum." It includes "any child that's a descendant of an enrolled member, so there's not a blood quantum connected to that." Mother and N do not meet the blood quantum requirement, and thus were not eligible for membership as fully enrolled members, but are eligible for descendancy membership. The Karuk Tribe is open to descendants to "maintain a connection with all our tribal members or all of our tribal people." Descendants are not eligible for full membership benefits and do not receive legal support. They do receive a "very minimal amount of support services[.]"

The Karuk Tribe's practice, at least at present, is to not intervene in dependency cases involving descendants. DHS's lawyer also asked Maloney about the tribe's view as to whether or not N fell within the ICWA's definition of "Indian child." That led to this exchange:

"[Counsel for DHS:]   And having reviewed that in the letter that you signed, the position of the tribe is that [N] is not an Indian child within the definition of the Indian Child Welfare Act?

"[Maloney:]   Within the definition of the Indian Child Welfare Act, the new definition of the Karuk Tribe all our descendants are Indian children.

"[Counsel for DHS:]   Correct. As descendant members?

"[The Court:]   Excuse me, [counsel]. The Court could not hear her answer when you asked whether or not [N] was a Indian child according to the tribe. Could she please repeat that answer slowly and loudly.

"[Counsel for DHS:]   Go ahead.

"[Maloney:]   "To answer the question as it was asked if—under the Indian Child Welfare Act, the tribe would not perceive a child as an Indian child, but as for the Karuk Tribe, we recognize all our descendants as Indian children.

"[Counsel for DHS:]   Within the tribe?

"[Maloney:]   Within the tribe, yes. Within the tribe."[1]

The tribe's explanation that mother was a descendancy member and that N was eligible to become a descendancy member would seem to be the end of the story as to whether N is an "Indian child" for purposes of the ICWA. The text of 25 USC section 1903(4) is plain that a person under the age of 18 who is the child of a member of a tribe and who is eligible for a membership themselves is an "Indian Child." N is exactly that. He is the child of a descendant member of the Karuk Tribe and is eligible for descendancy membership himself.

The juvenile court nonetheless reached a contrary conclusion. As we understand the court's ruling, it did so based on the fact that the Karuk Tribe recognizes two tiers of membership. In its view, membership based on descendancy

---

[1] DHS interprets Maloney's testimony that, "[t]o answer the question as it was asked if—under the Indian Child Welfare Act, the tribe would not perceive a child as an Indian child" as a statement that the tribe did not view N as a member for purposes of the ICWA. In context, though, that statement is more plausibly understood to be a restatement of the question that DHS's counsel posed to her, which used "not" in its formulation: "[T]he position of the tribe is that [N] is not an Indian child within the definition of the Indian Child Welfare Act?" Maloney stated explicitly that she was going "to answer the question as it was asked," and then paraphrased the question that had been posed to her. Then, as she had before, she stated that the Tribe's position was that descendants were Indian children.

does not qualify as membership in the Karuk Tribe for purposes of the ICWA.

That conclusion is contrary to the plain text of the ICWA. The terms of 25 USC section 1903(4) do not distinguish between or among types of tribal memberships, or provide any plausible basis for treating one class of tribal membership differently from another. More to the point, where, as, here, a tribe has established more than one class of membership, as written, 25 USC section 1903(4) does not grant courts the latitude to determine that children eligible for some types of tribal membership would qualify as Indian children, but those eligible for other types would not.

"A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 US 49, 72 n 32, 98 S Ct 1670, 56 L Ed 2d 106 (1978); *see also Restatement of the Law of American Indians* (Tent Draft No. 2) § 25 & cmt a (Mar 13, 2018) (providing that "Indian tribes have the inherent power to determine their own membership or citizen criteria" and identifying some of the different types of membership criteria tribes have chosen). "[T]ribal membership criteria, classifications of membership, and interpretation of membership laws are unique to each tribe and vary across tribal nations." *See* Tommy Miller, *Beyond Blood Quantum: The Legal and Political Implications of Expanding Tribal Enrollment*, 3 Am Indian L J 323, 323 (2014) (describing a range of approaches to tribal membership, including both blood quantum and descendancy approaches). Further, as the Karuk Tribe has done, "[s]ome tribes have created classes of citizenship that limit certain tribal members' rights or privileges. For example, tribal law might provide that tribal members who live outside a tribally designated area cannot vote in tribal elections." *Restatement* § 25 (Tent Draft No. 2), cmt b; *see also id.*, Reporters' Note to cmt b.

For a court to determine that some recognized tribal members, or persons eligible to become members, are not members of a tribe for purposes of the ICWA would interfere with the tribes' sovereign right to determine for themselves membership qualifications and classifications. Courts are

ill-equipped to second guess or rank the sovereign choices that a tribe has made about who to count as a member and how to count them, and the text of the ICWA quite plainly indicates that Congress did not intend for courts to do so. If it had, we think Congress itself would have specified what classes of membership it intended to count for purposes of the ICWA and what classes it intended to exclude, and it is not our role to rewrite the statute Congress has written. *See Puerto Rico v. Franklin Cal. Tax-Free Trus*t, 579 US 115, 136 S Ct 1938, 1949, 195 L Ed 2d 298 (2016) ("[O]ur constitutional structure does not permit this Court to 'rewrite the statute that Congress has enacted.'" (Internal citation omitted; brackets added.)).

In arguing for a contrary result, DHS suggests that the tribe itself has determined that the ICWA does not apply, and urges us to follow that determination. In support of that argument, DHS points to testimony by Maloney that it understands to say that the Karuk Tribe does not view descendant members as members for purposes of the ICWA's definition of "Indian child." *See* 311 Or App at 107 n 1 (discussing DHS's understanding of Maloney's testimony). We do not read Maloney's testimony the same way; we understand her to have testified that the tribe does view descendant members, and those eligible to become descendant members, as Indian children. *See id.* (explaining our understanding of Maloney's testimony). But even if Maloney's testimony was as DHS understands it, that does not alter the conclusion that N is an Indian child for purposes of the ICWA. Although membership (or membership eligibility) is a question of fact on which a tribe's word is conclusive, as is the case with any statute, whether the facts about a child's membership or eligibility for membership ultimately mean that a child is an Indian child under the ICWA is a legal question for the court to be determined by reference to the terms of the statute, not by reference to a tribe's view of whether the ICWA applies.[2]

Finally, although we view the text of 25 USC section 1903(4) to speak unambiguously to the question of whether,

---

[2] On that point, we observe that, although the ICWA grants tribes certain rights and protections, the ICWA does not compel that a tribe must exercise the rights afforded to it.

with respect to a tribe with membership tiers, membership tier makes a difference as to ICWA applicability, the same result obtains even if the statute is treated as ambiguous. The Supreme Court has directed that the ambiguities in statutes enacted for the benefit of tribes should be resolved in favor of tribal interests. *Blackfeet Tribe of Indians*, 471 US at 766. The tribal interests protected by the ICWA, as the Washington Supreme Court recently explained, include having a remedy for past governmental destruction of families and communities, and preserving and strengthening the tribal communities harmed by that destruction at the hands of the government:

> "ICWA *** [was] enacted to remedy the historical and persistent state-sponsored destruction of Native families and communities. These are baseline protections, passed as a step toward rectifying the horrific wrongs of widespread removal of Native children from their families and states' consistent failure to provide due process to tribes. The act[] provide[s] specific protections for Native children in child welfare proceedings and [is] aimed at preserving the children's relationships with their families, Native communities, and identities. The act[] also require[s] states to send notice to tribes so that tribes may exercise their independent rights and interests to protect their children and, in turn, the continuing existence of tribes as thriving communities for generations to come."

*Matter of Dependency of Z. J. G.*, 471 P3d 853, 856 (Wa 2020) (brackets added). Construing 25 USC section 1903(4) to apply to all tiers of membership that a tribe, in the exercise of its sovereign power has elected to recognize, favors and safeguards those interests that Congress intended to protect. Construing it otherwise would not.

Reversed and remanded.